# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

BILLY WILLIAMS, AIS 256314,   :

    Plaintiff,   :

vs.   :   CA 09-0578-KD-C

GRANTT CULLIVER,   :

    Defendant.

## REPORT AND RECOMMENDATION

This cause is before the undersigned for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the complaint (Doc. 1) and the defendant's special report (Doc. 31), which was converted into a motion for summary judgment (*see* Doc. 32). After consideration of the foregoing pleadings, and all other relevant materials in the case filed, it is the undersigned's recommendation that the defendant's motion for summary judgment be **GRANTED IN ITS ENTIRETY**.

## FINDINGS OF FACT

1.    On August 18, 2009, at approximately 5:30 a.m., three regional Correctional Emergency Response Teams ("CERTs") reported to Fountain Correctional Facility to conduct a search for contraband. (Doc. 31, Exhibit D, at 1)[1] All dorms were

---

[1] Numerous items of contraband were confiscated, including more than fifteen (15) cell phones (*compare* Doc. 31, Exhibit C, at 2-7 *with id.,* Exhibit D, at 2-9).

1

searched (Doc. 31, Exhibit C, at 1) and, according to plaintiff, at approximately 6:30 a.m. an unknown (but male) CERT member struck him in the head three times with a billy club as he lay face down on his bed, slapped him numerous times in the face, choked him with the billy club, and then snatched him off his bed and took him to the bathroom where he continued to choke and assault him. (Doc. 1, at 4-5) Williams alleges that all prisoners remained sleeping while this assault took place but that Correctional Officer Lemon observed the assault to his person. (*Id*. at 5) The only defendant Williams has identified by name is Grantt Culliver, warden of Fountain at the time the institutional search was conducted. (*Id.*) With respect to Culliver, plaintiff claims the "[d]eliberate indifference standard [is to be] applied to conduct of this officer who failed to intervene in beating by the above officer." (*Id*.)

2. Officer Doleshia Lemon, who was assigned to Dorm 7 (Faith Dorm), Williams' dorm, when the institutional shakedown was conducted, denies that she witnessed a CERT team member assault or harm plaintiff. (Doc. 31, Exhibit B, Affidavit of Doleshia Lemon)

3. Culliver was present at Fountain when the CERT team conducted its search and, at some point during the search, entered each dorm. (Doc. 31, Exhibit A, Affidavit of Grantt Culliver, at 2) According to Culliver, the conduct described by Williams is not condoned by the Alabama Department of Corrections, could not have occurred without significant noise and disruption and, further, that Williams had the opportunity to report any abuse to him but did not do so. (*See id*. at 2-3)

4. At approximately 5:00 p.m. on August 18, 2009, Williams went to the shift office and reported the assault to Lieutenant Gwendolyn Givens. (Doc. 31, Exhibit E, at 1) Givens asked Williams why he did not report the incident to a first shift supervisor and was told that inmates were not allowed to leave the dorm due to the institutional shakedown. (*Id*.) Givens then gave Williams a sick call slip to complete; plaintiff completed the form and placed it in the sick call box. (*Id*.) Williams was assessed by Sandra Lett, a Licensed Practical Nurse, on August 17, 2009; Lett did not find it necessary to refer Williams to a physician or hospital for assessment and treatment. (*Id*. at 2)

5. On October 28, 2009, Williams was received at J.O. Davis Correctional Facility, from Fountain, "to fill available bed space." (Doc. 31, Exhibit F, at 1) On November 16, 2009, plaintiff complained to J.O. Davis officials about being confined there and, more specifically, about the inability to conduct legal research at the facility. (*See id*.) At some point that day, plaintiff also complained about head and neck injuries he had received on August 18, 2009 at Fountain. (*Id*.) Williams was examined by the nurse practitioner and was informed that if he desired a CT scan, one would be scheduled. (*Id*.) However, Williams simply returned to the Captain's office and requested that he be sent back to Fountain to use the law library and procure the assistance of law clerks at Fountain; he was transferred back to Fountain that same day. (*Id*. at 1-2)[2]

---

[2] Plaintiff has filed no response to Culliver's special report (Doc. 31), which the undersigned converted into a motion for summary judgment (Doc. 32). (*See* Docket Sheet) Instead, Williams has informed this Court that he has refused to accept legal mail from officials
(Continued)

## CONCLUSIONS OF LAW

   A.   **Summary Judgment Standard**.

   1.   Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

---

at Bullock Correctional Facility on the basis that this mail had been tampered with by officials at the facility. (*See* Doc. 33) It is clear that Williams refused the mail even after being informed by a mailroom clerk at Bullock that the mail arrived at the facility with tape sealing the envelope (*compare id.* at 1 ("ON SEPTEMBER 24, 2010 PLAINTIFF WAS CALLED TO THE SHIFT COMMANDER'S OFFICE FOR LEGAL MAIL HERE AT BULLOCK COUNTY CORRECTIONAL FACILITY AT APPROXIMATELY 9:30 P.M. PLAINTIFF DISCOVERED THAT HIS LEGAL MAIL ENVELOPE FROM THIS COURT ALREADY HAD BEEN OPEN[ED] AND TAPE HAD BEEN PLACED ON THE BACK OF THE ENVELOPE TO MAKE IT LOOK AS THOUGH IT WASN'T.") *with* Doc. 34, October 6, 2010 Letter from Tawanda S. Hill ("Mail was attempted to be served on inmate on 9/23/10 and 9/27/10. Inmate refused to sign for mail stating his mail appeared to be tampered with although it was being opened in his presence. Although it was attempted several times explaining to the inmate the mail arrived with the letter being sealed by tape, the inmate didn't understand and still refused to sign.")). Because it is not unusual for mail to leave this Court after being sealed with tape, which is what happened in this case, Williams has only himself to blame for not receiving the conversion order. Therefore, this Court need not await a response from plaintiff before ruling on the instant dispositive motion.

2. The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp., supra*, 477 U.S. at 324, 106 S.Ct. at 2553, quoting Fed.R.Civ.P. 56(e); *see also Allen*, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

3. In considering whether the plaintiff is entitled to summary judgment, the Court has viewed the facts in the light most favorable to plaintiff Billy Williams. *Comer, supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute

requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra*, 573 F.3d at 1165 (internal citations omitted).

**B.    Plaintiff's § 1983 Claim Against Warden Grantt Culliver and Proper Disposition of this Claim**.[3]

4.    The Eighth Amendment to the United States Constitution proscribes cruel and unusual punishments. U.S. CONST. amend. VIII. "Claims of excessive force by prison officials against convicted inmates[, as here,] are governed by the Eighth Amendment's proscription against cruel and unusual punishment." *Johnson, supra,* 692 F.Supp. at 1325 (citation omitted).

> A correctional official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. A constitutional violation occurs only when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. A plaintiff must also show that the constitutional violation caused his injuries.
>
> The law is well settled that both objective and subjective elements are necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements of a deliberate indifference claim, an

---

[3]    To the extent Williams seeks to obtain money from Culliver in his official capacity, the defendant is entitled to absolute immunity. *Johnson v. Deloach*, 692 F.Supp.2d 1316, 1325 (M.D. Ala. 2010) ("'Alabama state officials are immune from claims brought against them in their official capacities.' . . . [I]t is clear to the court that the defendants [including Draper's warden, James Deloach,] are state officials entitled to sovereign immunity under the Eleventh Amendment for all claims seeking monetary damages from them in their official capacities. . . . Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities.").

7

inmate must first show an objectively substantial risk of serious harm existed. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner. As to the subjective elements, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. *An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.* The conduct at issue must involve more than ordinary lack of due care for the prisoner's interests or safety. It is *obduracy and wantonness, not inadvertence or error in good faith,* that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official order over a tumultuous cellblock.

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also draw that inference.

The known risk of injury must be a strong likelihood, rather than a mere possibility before a correctional official's failure to act can constitute deliberate indifference. As the foregoing makes clear, merely negligent failure to protect an inmate does not justify liability under section 1983[.]

> Pursuant to the aforementioned criteria, [plaintiff] is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that substantial risk; and (3) causation in order to survive summary judgment on his deliberate indifference claim against the supervisory officials.

*Id*. at 1328-1330 (internal citations, ellipses, brackets, and most quotation marks omitted; emphasis in original); *cf. Gross v. White*, 340 Fed.Appx. 527, 530-531 (11th Cir. 2009) ("Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions

of their subordinates based on respondeat superior liability. The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous. A claim based on supervisory liability must allege that the supervisor: (1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would." (internal citations and quotation marks omitted)); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy [] results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." (internal citations, quotation marks, ellipses, and brackets omitted)).

5. The record in this case is entirely devoid of any evidence that Williams' alleged assault at the hands of an unidentified CERT officer occurred due to the deliberate indifference of Culliver. Plaintiff has presented no evidence whatsoever of an

9

objectively substantial risk of harm at the time of the alleged incident nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by Culliver. Culliver has specifically stated that Williams did not even inform him, after the fact, that he had been assaulted, though the warden visited each dorm on the date in question and, more importantly, the allegations of the complaint are such that it is clear plaintiff was as surprised as anyone to be assaulted by a CERT officer during the institutional shakedown. Such a surprise, unanticipated attack certainly cannot rise to the level of an Eighth Amendment violation by a supervisory prison official. Consequently, summary judgment is due to be granted in favor of defendant Culliver on the claim of deliberate indifference lodged against him by Williams.

## CONCLUSION

In light of the foregoing, the undersigned recommends that the motion for summary judgment filed by defendant Grantt Culliver (Doc. 31) be **GRANTED IN ITS ENTIRETY** and that plaintiff's Eighth Amendment claim asserted against the moving defendant be **DISMISSED WITH PREJUDICE**.[4]

---

[4] Because "fictitious party practice is not permitted in federal court[,]" *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094, n.1 (11th Cir. 1997); *see also Love v. Town of Ariton*, 2010 WL 1052852, *1 (M.D. Ala. Mar. 23, 2010) ("The Court finds that there is no fictitious party practice in federal courts."); *Sanders v. City of Union Springs,* 405 F.Supp.2d 1358, 1370 (M.D. Ala. 2005) ("[F]ictitious party practice is not allowed by the Federal Rules of Civil Procedure."), *aff'd,* 207 Fed.Appx. 960 (11th Cir. 2006), the unidentified CERT officer referenced in plaintiff's complaint, as well as the claims plaintiff asserts against that unidentified officer, should be **DISMISSED WITHOUT PREJUDICE**. *Compare Love, supra,* at *1 ("[I]t is hereby ORDERED that all federal claims in Count VI are DISMISSED WITHOUT PREJUDICE.") *with Edwards v. Alabama Department of Corrections*, 81 F.Supp.2d 1242, 1257 (M.D. Ala. 2000) ("It is ORDERED that the fictitious defendants are dismissed in this case.").

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 3rd day of November, 2010.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.  *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  *Transcript* (*applicable Where Proceedings Tape Recorded*).  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).